IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

ROLEX WATCH U.S.A., INC.,

    Plaintiff,

v.   No. 3:95-CV-1058-T

ROBERT MEECE d/b/a
AMERICAN WHOLESALE JEWELRY,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action came before the Court, Honorable Robert B. Maloney, presiding, on remand from the United States Court of Appeals for the Fifth Circuit. After considering the parties' arguments on remand, the Court makes the following findings of fact[1] and conclusions of law. The Court reserves the right to enter more specific findings of fact and conclusions of law should the Court consider it necessary.

### Introduction

Plaintiff Rolex Watch U.S.A., Inc., is the exclusive distributor in the United States of watches and products sold under the trademarks of Rolex. Defendant Robert Meece d/b/a

---

[1] The Findings of Fact are related to the issues on remand only and are not repetitious of the previous findings of this court.

American Wholesale Jewelry advertises and sells generic replacement parts for numerous brands of watches, including Rolex watches. On June 2, 1995, Rolex filed suit for trademark infringement and unfair competition. Rolex sought a permanent injunction prohibiting Meece from using any Rolex mark in connection with the importation, assembly, advertisement, sale, or other distribution of goods or services.

After a non-jury trial concluded February 11, 1997, Meece was enjoined from performing any services which would involve injecting into commerce a watch bearing a Rolex mark which is reconstructed with generic replacement parts and which simulates a Rolex Submariner or other Rolex watch. All other relief requested by Rolex was denied. Rolex appealed the decision to the Fifth Circuit.

The Fifth Circuit held: (1) that this court's injunction extended to both sales of new, genuine Rolex watches, which Meece enhanced by substituting non-genuine parts, and sales of used Rolex watches which Meece converted by combining genuine movements with non-genuine parts; (2) that Meece's non-genuine parts, such as diamond bezels, bracelets, and dials, are necessary and integral parts of a Rolex watch, and the substitution of these parts with non-genuine parts results in a different product no longer guaranteed by Rolex; (3) that the district court erred when it found that Meece's profits from sales of infringing watches were *de minimis*; and (4) that the district court did not err in finding no deliberate infringement and thus refusing to award profits and attorneys' fees under § 1117(a), finding no contributory infringement from Meece's sales of non-genuine replacement parts and thus not requiring disclosure on said parts, and refusing to rejoin Meece's use of Rolex trademarks to identify

Rolex products corresponding to his replacement parts. Accordingly, the Fifth Circuit affirmed in part and vacated in part this court's judgment and remanded the case to determine:

1) Whether Meece's use of Rolex trademarks on enhanced new watches,[2] converted used watches,[3] and non-genuine bracelets with genuine Rolex clasps caused them to be counterfeit within the meaning of 15 U.S.C. § 1116(d) and § 1127, and, if so, whether treble profits and attorney fees should be awarded to Rolex pursuant to 15 U.S.C. § 1117(b).

2) Whether Meece's design mark is likely to cause confusion with the Rolex Crown Design mark in light of all of the appropriate digits of confusion and the guidelines testified to by Rolex's expert witness.

**Findings of Fact**

1. Rolex is the owner of the mark Rolex, the Crown Design, and a number of other trademarks used in association with Rolex watches. These marks have been used to identify watches of high quality for decades and are the subject of federal trademark registrations. All the registrations are now incontestable under 15 U.S.C. § 1065.

---

[2] The Fifth Circuit defined this term as, "new, genuine Rolex watches, which Meece purchased and then 'enhanced' by substituting non-genuine parts, such as diamond bezels and/or bracelets. It also includes new, genuine Rolex watches from which Meece removed the dials, drilled holes in them, added diamonds, refinished the dials, and then re-installed them on the watches." *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 820 (5th Cir. 1998).

[3] Converted used watches are "Rolex watches which Meece 'converted' by recasing genuine old Rolex movements in non-genuine Rolex cases and substitution other non-genuine parts." *Rolex*, 158 F.3d at 820.

FINDINGS OF FACT AND CONCLUSIONS OF LAW                                                                    Page 3

2. Rolex watches bear the Rolex mark and Crown Design on the dial. The Crown Design also appears on the winding stem and the exterior of the Rolex bracelet clasp. The Rolex trademark is on the clasp interior. The Crown Design is stamped on the bezel and is not visible unless the bezel is removed. Other trademarks such as Oyster Perpetual Datejust also appear on the dial.

3. The Crown Design trademark is an arbitrary mark, consisting of a crown with five prongs and a ball on top of each prong.

4. Rolex distributes watches through official Rolex jewelers.

5. Rolex and its jewelers sell Rolex watches with packaging materials displaying one or more of the Rolex marks.

6. Rolex watches are in their entirety fully warranted and guaranteed by Rolex.

7. Official Rolex jewelers distribute Rolex warranties with the sale of a new Rolex product and provide service under the warranty.

8. The warranty distributed with Rolex watches runs for a one-year period from the date of purchase from an official Rolex jeweler.

9. A complete Rolex watch consists of: (1) the watch case containing the watch movement; (2) the dial; (3) the bezel consisting of a circular piece that surrounds the crystal and seals the watch in the front; and (4) the bracelet (also refereed to as the band) which includes the clasp.

10. The modification of a Rolex watch by the addition or substitution of parts not authorized by Rolex voids the Rolex warranty.

11. Rolex does not service Rolex watches which have been modified with non-Rolex parts.

12.     American Wholesale is owned and operated by Robert Meece, has been in business since 1979, and has average gross annual sales of $4,200,000. Rolex has been aware of Meece's operations since as early as 1983.

13.     In addition to replacement parts designed to fit Rolex watches, Meece sells new Rolex watches enhanced with non-Rolex diamond dials, diamond bezels, and diamond bracelets. Meece distributes these watches with the Rolex green factory sticker on the back of the watch case, the Rolex tag, and the Rolex warranty. Meece also places genuine Rolex clasps bearing the Rolex Crown Design mark on generic bands.

14.     Rolex did not perform or authorize the modifications, and its warranty was voided by Meece's activities.

15.     The parts replaced by Meece—diamond bezel, dials, bracelets—are integral and necessary to the watch.

16.     The quality of Meece's non-genuine Rolex replacement parts is not as good as genuine Rolex parts. Meece stipulated that he had quality problems where his bands fell apart, that his bands are not the same weight as Rolex bands, and that some of his diamonds were of poor quality. Meece also testified that he does not pressure test the watch after he installs a bezel.

17.     The parts Meece sells do not bear any markings indicating the Meece is the source. However, Meece uses a mark on non-genuine bracelet clasps which is a four-sided figure, the top of which is wider than the bottom. It has a smoother border, and a matte finish in the center.

18.     Meece advertises his products and services only to retail jewelers. He mails price sheets to all the retail jewelers in the United States and advertises in two national trade journals.

19.     The advertising brochures indicate that American Wholesale replacement parts are not genuine Rolex parts, that American Wholesale is not affiliated with Rolex, and that the reconstruction work will void the Rolex warranty.

20.     Subsequent potential purchasers of reconstructed watches may not have the benefit of dealing with a jeweler or viewing American Wholesale's advertising brochures.

21.     Meece does not control how watches containing non-Rolex parts are sold to the ultimate consumer, and, when he sells to retailers, he has no way of knowing an actual consumer exists.

22.     Rolex produced Meece's invoices reflecting enhanced new watch sales of $1,813,748; converted used watch sales of $26,475, and sales of non-genuine bracelets with genuine Rolex clasps of $5,940.

23.     Rolex and Meece provided the documents and testimony to support the following calculations of Meece's profits from enhanced new watch sales, converted used watch sales, and sales of non-genuine bracelets with genuine Rolex clasps:

> $15,819.08 = 1% profit on $1,581,908 (new watches)
>
> $57,960.00 = 25% profit on $231,840 (non-genuine parts added to new watches)
>
> $ 6,618.75 = 25% profit on $26,475 (converted used watches)
>
> $ 1,485.00 = 25% profit on $5,940 (Rolex clasps on non-Rolex bands)
>
> $81,882.83 = TOTAL

## Conclusions of Law

1.     The purpose of trademark law is to guarantee that every item sold under a trademark is the genuine trademarked product, and not a substitute. *See General Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir. 1989).

2.     Pursuant to 15 U.S.C. § 1116(d), a counterfeit mark is defined as "(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 3809 of Title 36 . . . ."

3.     Similarly, section 1127 defines a "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

4.     The use of a genuine trademark, instead of an imitation or copy of a trademark, may constitute counterfeiting. *See Westinghouse Elec. Corp. v. General Circuit Breaker & Electric Supply, Inc.*, 106 F.3d 894 (9th Cir. 1997), *cert. denied* 522 U.S. 857 (1997) (holding that when an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a counterfeit just as it would if an imitation of the mark were attached).

5.     Meece used Rolex marks on goods covered by the Rolex registrations, and his use was unauthorized by Rolex.

6.     Meece's use of Rolex trademarks on the enhanced new watches and converted used watches constitutes trademark counterfeiting because: (a) Meece modified new, genuine Rolex

watches with non-genuine parts to make them resemble more expensive Rolex watches; (b) although Rolex was still the source of the watches, it was not responsible for the non-genuine diamond bezels added by Meece, for refinishing and placing diamonds in the genuine Rolex dials, or for any diamonds added to the bracelets; (c) Rolex did not perform or authorize the modifications, and its warranty was voided by Meece's activities; (d) Meece, not Rolex stood behind the watches, but the trademark suggested otherwise; (e) Meece distributed enhanced new watches without any markings of disclosures that would reach ultimate consumers or secondary purchasers, and the watches were placed in a genuine Rolex box and contained a Rolex factory seal, tag, and winding instructions; and (f) Meece stipulated that he does not control how watches containing non-Rolex parts are sold to the ultimate consumer, and when he sells to retailers he has no way of knowing an actual consumer exists.

7. Similarly, Meece's placement of original Rolex clasps on non-genuine bracelets increased the likelihood of confusion as to the genuineness of the watch, and this activity constituted counterfeiting under the statue.

8. Although Meece argues that most watches were sold in response to customer requests, "Once a product is injected into commerce there is no bar to confusion, mistake, or deception occurring at some future point in time." *See Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1244 (6th Cir. 1991).

9. Monetary remedies for trademark counterfeiting are found in 15 U.S.C. § 1117(b), which provides that

> the court shall, unless the court finds extenuating circumstances, enter judgment for three time such profits, damages which is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title . . .

that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title) . . . .

10. The statutory damages provision in the counterfeit statute requires only that the defendant intentionally use a mark knowing it to be counterfeit. A finding of intent to deceive is not required for a finding of counterfeiting. *See* 15 U.S.C. § 1117(c) (listing two specific categories of counterfeiting: (1) use of a counterfeit mark and (2) *willful* use of a counterfeit mark).

11. Rolex is entitled to treble profits and to attorney's fees under 15 U.S.C. § 1117(b) because the use of the Rolex marks on watches Meece knew were assembled without Rolex's approval constitutes intentional use of a mark knowing it to be counterfeit. *Cf. H-D Michigan, Inc. v. Biker's Dream, Inc.*, 48 U.S.P.Q.2d 1108 (C.D. Cal. 1998)(finding that defendant's unauthorized use of the Harley-Davidson logo on customized non-genuine motorcycles constituted counterfeiting).

12. If extenuating circumstances exist, a court may not award damages and attorney's fees, and extenuating circumstances are to be determined on a case-by-case basis. *See Fendi: S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F. Supp. 1143, 1147 (S.D. NY 1986).

13. The Court finds no extenuating circumstances to preclude the statutory damages award.

14. In determining whether Meece's mark on non-genuine bracelet clasps is likely to cause confusion with the Rolex Crown Design mark, the Court should consider the following non-exhaustive list of factors: (a) the type of the trademark allegedly infringed, (b) the similarity between the two marks, (c) the similarity of the products or services, (d) the identity of the retail outlets and purchasers, (e) the identity of the advertising media used, (f) the defendant's intent, and (g) any evidence of actual confusion. *See Elvis Presley Enterprises v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998).

15. The Rolex Crown Design is an arbitrary mark entitled to protection.

16. In determining the similarity of the marks, they should not be compared side-by-side because they would not be seen in that context by consumers. The fact that consumer recollection is imperfect should also be considered. The overall context of the design of Meece's mark, including its use on bracelets that look identical to Rolex bracelets and its placement in the same location on the bracelets, must be considered. Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features. *See Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 830 (5th Cir. 1998).

17. In applying these standards, the Court concludes that the marks used by the parties are not similar. The Rolex mark is a crown with five prongs and a ball on top of each prong and a circle at the bottom. The mark used by Meece is a four-sided figure with a smooth border and a matte finish inside.

18. The bracelets sold by Rolex and Meece are similar products. However, even if products are almost identical, there is little likelihood of confusion when they are expensive and unlikely to be purchased impulsively, as is the case here. *See Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409 (S.D. Tex. 1995). Also, the replacement bands sold by Meece indicate that they are made in Italy, and the Rolex bands contain the terms "Swiss Made" and "Geneve."

19. Concerning the similarity of retail outlets and advertising, Rolex distributes its products to the public, and Meece's product is typically passed from a jeweler to a person who has placed a special order through the jeweler for the product. Unlike Rolex, Meece advertises his products and services only to retail jewelers. Meece's advertisements state that the parts he adds are generic replacement parts, and the name American Wholesale Jewelers is prominently

displayed in all advertisements along with a disclaimer that Meece is not a dealer or affiliated with Rolex in any way.

20.   Likelihood of confusion can be found to be absent where the typical purchaser is sophisticated. *See Brandtjen & Kluge, Inc. v. Prudhomme*, 765 F. Supp. 1551 (N.D. Tex. 1991). Furthermore, when a product is of relatively high cost, the customer is presumable more likely to investigate before purchasing. *Id.* Rolex purchasers are very sophisticated, and they are not likely to confuse Meece's mark with the Rolex Crown Design.

21.   Meece did not intentionally infringe the Rolex marks.

22.   There is no evidence of actual confusion. Proof that confusion is merely possible is insufficient to establish that confusion is likely. *See Sears Roebuck & Co. v. All States Life Ins. Co.*, 246 F.2d 161 (5th Cir. 1957).

23.   Considering the appropriate digits of confusion and the guidelines under which the marks should be compared, the Court concludes that Meece's mark is not confusingly similar to the Rolex Crown Design.

## Conclusion

The Court concludes that Meece's use of Rolex trademarks on the enhanced new watches, converted used watches, and non-genuine bracelets with genuine Rolex clasps caused them to be counterfeit within the statutory definition. Also, the Court finds no extenuating circumstances to negate awarding treble profits and attorney's fees under the statutory damages provision. Although the parties have provided the Court with the amount of Meece's profits

from his sales of the counterfeit products, the Court has no basis for calculating reasonable attorney's fees. Therefore, the judgment will not reflect attorney's fees. However, if the parties agree to an amount of reasonable attorney's fees or if detailed time records are submitted by Rolex so that fees can be calculated, the Court will issue an amended final judgment awarding Rolex its attorney's fees.

After considering the appropriate digits of confusion and the proper guidelines for determining whether a mark is likely to cause confusion with another mark, the Court determines that Meece's mark on non-genuine bracelet clasps is not confusingly similar to the Rolex Crown Design.

Signed this 25 day of January, 2000.

_____
Robert B. Maloney
U.S. District Judge